**TRACY WILLIAMS,**

      **Plaintiff,**

**v.**                       **No. 2:17-CV-00344 JCH/SMV**

**UNITED STATES OF AMERICA,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

On June 29, 2018, Plaintiff Tracy Williams filed four partial motions for summary judgment: (i) Motion for Partial Summary Judgment on Reasonableness of Charges for Necessary Medical Treatment (ECF No. 46); (ii) Motion for Partial Summary Judgment on Causation (ECF No. 47); (iii) Motion for Partial Summary Judgment on the Foreseeability and Reasonableness of Plaintiff's Self-Instrumentation (ECF No. 48); and (iv) Motion for Partial Summary Judgment on Liability (ECF No. 49).[1] Plaintiff is asserting a claim for medical negligence against the dentist who allegedly, while taking a dental impression to create a set of partial dentures, failed to prevent her from swallowing dental impression material that purportedly caused abscesses and colon perforation. Defendant filed responses opposing each motion. The Court, having considered the motions, briefs, evidence, relevant law, and otherwise being fully advised, concludes that Plaintiff's motions for partial summary judgment on the reasonableness of medical charges and on causation should be denied, and Plaintiff's motions for partial summary judgment on the foreseeability and reasonableness of her self-instrumentation and on liability should be granted in

---

[1] This case involves one count for medical negligence, yet Plaintiff filed four separate motions for partial summary judgment. By filing four separate motions on individual issues, Plaintiff appears to have attempted to avoid the Court's page limitations, as there seems no other explanation for filing four separate motions. The facts relevant to each motion were largely the same and all the issues involved the same claim. These four motions should have been filed as one motion. Instead, the Court read virtually the same introduction, basic facts, summary judgment standard, and exhibits four separate times, causing a waste of judicial resources at a time when the Court's resources are already stretched thin.

limited part and otherwise denied, as described more fully herein.

## I.  STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the moving party initially bears the burden of showing that no genuine issue of material fact exists. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial. *Id.* The nonmoving party must go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (internal quotations omitted). Only disputes of facts that might affect the outcome of the case will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). There is no issue for trial unless there is enough evidence favoring the nonmoving party for a jury to return a verdict for that party. *See id.* at 248. The following facts are undisputed or are those construed in the light most favorable to Defendant, the non-moving party.

## II.  FACTUAL BACKGROUND

On November 19, 2015, Tracy Williams (now known as Tracy Thomas, but herein referred to as Ms. Williams, her name at the time of the events in question) had impressions taken at the dental clinic of Ben Archer Health Center in Alamogordo, New Mexico. Pl.'s Mot., Undisputed Fact ("UF") ¶ 1, ECF No. 46. Dr. C. Ray Puckett, DDS, assisted by Rory Albrecht, took the

impressions. *Id.* at UF ¶ 2. Ms. Williams was seated in a dental chair in a reclined position. *See* Williams Dep. 44:16-45:1, ECF No. 54-5; Puckett Dep. 31:14-32:18, ECF No. 54-1.[2]

Dr. Puckett used Aquasil Rigid and Aquasil Monophase for the dental impression. Def.'s Resp. to Pl.'s First Set of Interrog. No. 11, ECF No. 59 at 10. Aquasil Rigid is a light green color. *See* Def.'s Resp. to Pl.'s First Set of Req. for Prod. No. 2, ECF No. 59 at 11-12. The material used to make Williams' dental impressions would be soft upon mixing but would harden over time. Def.'s Resp. to Pl.'s First Set of Req. for Admis. ¶ 10, ECF No. 61 at 22-23. Monophase is a thicker material, so it does not run. Gonzales Dep. 27:4-5, ECF No. 54-2.

Beginning in December 2015, Ms. Williams sought medical care for abdominal pain and gastrointestinal distress. UF ¶ 3, ECF No. 46. During this time, Plaintiff attempted to relieve what she believed to be severe constipation by attempting to digitally locate and dislodge rectal material and by using an enema. UF ¶ 4, ECF No. 48.

On December 10, 2015, she underwent a bowel resection surgery in Albuquerque, New Mexico, for colon perforation and pelvic abscesses. Driscoll Aff. ¶¶ 4-6, ECF No. 46 at 12-13. At the time of the surgery, a foreign body was removed from her colon. UF ¶ 5, ECF No. 46. The medical treatment reflected in Plaintiff's medical records was necessary as a result of the ingested foreign body. Def.'s Resp. to Second Req. for Admis. and Interrog. ¶ 12, ECF 46 at 21.

A pathologist examined and photographed the foreign body immediately following surgery. UF ¶ 6, ECF No. 46. The pathologist in his report described the foreign body as "a 10.5

---

[2] Dr. Puckett testified, consistently with Ms. Williams, that she was reclined during the procedure. *See* Puckett Dep. 32:11-18, ECF No. 54-1. The parties dispute the degree of the angle -- whether she was fully reclined or partially reclined. *See* Williams Dep. 44:21-22 (saying she was reclined at an angle with her feet up). Patricia Gonzales described the typical reclined position Dr. Puckett uses as "sitting up, with a little – just a little bit back." Gonzales Dep. 27:9-10, ECF No. 54-2. Mr. Albrecht described the reclined position as the patient looking up at the ceiling. Albrecht Dep. 32:10-22, ECF No. 54-6. A patient partially reclined may be able to look at the ceiling. At the summary judgment stage, the Court must construe the facts and inferences in the favor of the non-moving party, so the Court will infer from the record that Ms. Williams was not fully reclined, but rather, partially reclined.

x 2.0 x 0.5 cm portion of irregular shaped red/brown rubbery material." Surgical Pathology Report, ECF No. 46 at 19.

### A. The foreign body

Defendant argues that there is a dispute of fact concerning what the foreign body was, relying on the following evidence to show it was not dental impression material. Dr. Puckett did not observe Ms. Williams swallow any of the dental material. Puckett Dep. 67:15-17, 70:25-71:2, ECF No. 51-1. He did not observe her gagging and she never told him she was uncomfortable. *Id.* 70:23-71:5. Rory Albrecht also does not remember her swallowing a large amount of dental impression material. Albrecht Dep. 44:13-18, ECF No. 51-5. Had it occurred he believes he would have remembered because it is uncommon and would have stood out. *Id.* 19-23.

Ms. Williams did not report swallowing dental material to Dr. Puckett or his staff that day. Puckett Dep. 67:18-21, 71:6-10, ECF No. 51-1; Albrecht Dep. 45:2-10, ECF No. 51-5. Had she reported swallowing dental material, it would have been reflected in her patient chart, but her chart had no notation of it. Puckett Dep. 67:22-68:6, ECF No. 51-1; Albrecht Dep. 45:2-10, ECF No. 51-5. Dr. Puckett explained that there was no reason for he or his staff to note Ms. Williams swallowed dental material because it did not happen. Puckett Dep. 67:22-68:6, ECF No. 51-1. Sometime later, after December 14th, Ms. Williams called and spoke to Mr. Albrecht, asking about whether the dental material dissolved or passed through, but she did not mention a specific concern or that she had swallowed the material. *See* Albrecht Dep. 9:14-11:8, 42:9-21, ECF No. 54-6. Mr. Albrecht informed her that it just passes through the system. *Id.* at 9:14-23.

While the dental impression material used with Ms. Williams, Aquasil Monophase, is a deep purple, the color of the foreign body in the photograph is red. Gonzales Dep. 23:2-24:18, ECF No. 51-2. Because the foreign body was not kept and is unavailable for analysis, Defendant's

gastroenterology expert, Dr. James E. Martinez, was unable to form an opinion as to the nature of the material removed from Ms. Williams. *See* Martinez Dep. 23:3-22, ECF No. 51-4. Dr. Robert Giannini, DDS, Defendant's dental expert, also testified that the nature of the foreign body was inconclusive. Giannini Dep. 15:2-13, ECF No. 51-3.

According to Plaintiff, Defendant's evidence does not properly dispute Plaintiff's dental expert's opinion that to a reasonable degree of medical/dental probability the foreign body was Aquasil impression material Dr. Puckett used on Ms. Williams during the November 19, 2015 impression procedures. Littman Aff. ¶ 14, ECF No. 46 at 25. Plaintiff points to evidence in which she testified to choking on and swallowing the impression material during the procedure and there was nothing else she could have swallowed. Williams Dep. 46:13-49:6, 115:8-116:2, ECF No. 59 at 19, 21. When asked in his deposition whether the foreign body looks different than what he would expect Aquasil monophase to look like after it has hardened, Dr. Puckett admitted, "It could be similar." Puckett Dep. 57:8-11, ECF No. 59 at 15. Dr. Giannini acknowledged that there was nothing in the pathology report that made him think that the foreign body could not be dental impression material. *See* Giannini Dep. 14:8-21, ECF No. 59 at 17.

### B.  Cause of colon perforation

Ms. Williams suffered a perforation in the rectum. Martinez Dep. 15:5-8, 62:8-20, 67:12-14, ECF No. 51-4. According to Dr. Martinez, it was unlikely that the foreign body caused the perforation for a few reasons. *Id.* at 15:17-17:15. First, he opined that typically sharp objects cause perforations, not blunt objects. *Id.* at 15:17-16:10. A blunt item typically may cause an obstruction. *Id.* at 16:8-10.[3] Second, Dr. Martinez opined that, if a foreign body causes a perforation, it

---

[3] Plaintiff disputes that the foreign body is blunt, relying on the photograph and surgeon's description of the foreign body as "an approximate 5 inch curved, plastic, tongue-shaped foreign body." Pl.'s Ex. I, ECF No. 61 at 30. The Court, however, must construe record-supported facts and inferences in favor of Defendant, the non-moving party.

generally stays in the perforation, but in Ms. Williams' case, the CAT scan showed the foreign body material much higher than the level of perforation in the rectum. *See id.* at 16:11-24, 68:17-69:1. According to December 1st and December 9th scans, the object was in the sigmoid colon area, the area adjacent to and "upstream" of the rectum. *See id.* at 26:11-28:2, 72:19-73:7. The December 9th CAT scan showed abscesses, evidence of a preexisting perforation. *See id.* at 73:19-74:1. At the time of her surgery on December 10th, the foreign body was in the perforation in the rectum. *Id.* at 73:19-73:7. Dr. Martinez believes the perforation in the rectum existed before the foreign body moved through it and that the foreign body did not cause the rectal perforation. *See id.* at 16:24-17:15, 72:19-74:1. Finally, he explained that a large object may cause obstruction with progressive dilation and ultimately perforation, but in Ms. Williams' records there was no evidence of progressive dilation of the proximal colon on any X rays or CAT scans. *See id.* at 17:20-19:15, 54:1-55:9.[4]

Dr. Martinez believes Ms. Williams shares fault for the injures she suffered. *Id.* at 24:3-5. He opined that Plaintiff's digital manipulation of her rectum to try to dis-impact the fetal impaction and/or giving herself two enemas that caused discomfort very likely caused her rectal perforation. *See id.* at 28:3-30:14, 62:8-72:18. He admitted, however, that if all she did was insert half a finger, that is unlikely to cause a perforation. *Id.* at 65:11-14.

Patients may attempt to cope with fecal impaction by digitally attempting to dis-impact it. *See id.* at 29:1-9, 66:4-11. In his experience, Dr. Martinez acknowledges patients also may feel discomfort and seek relief using an enema, which is reasonable. *See id.* at 38:11-24, 40:11-24. It is not advisable, however, to use digital removal if the patient had no success with laxatives or

---

[4] Plaintiff submitted her medical records that describe a "Sigmoid colon perforation form foreign body." Pl.'s Ex. F, ECF No. 61 at 24. Defendant, the non-moving party, however, has submitted evidence that the perforation was in the rectum, so the Court must accept that fact as true on summary judgment. The Court cannot make credibility determinations at this stage in the proceedings.

enemas. *See id.* at 40:11-24.

### C. Standards in Dentistry

#### 1. Knowledge of impression products and associated risks

Dr. Giannini, a general dentist and undisputed expert in general dentistry with several decades of practice, including performing thousands of impression-taking procedures, is familiar with the standard of care for dentists and with the standard of care for performing dental impressions. *See* UF ¶¶ 7-9, ECF No. 49. Dr. Giannini's opinion is that a reasonable dentist, before using a certain product, should educate himself on what the warnings are for a given product, especially manufacturer's warnings and precautions indicated by the manufacturer. UF ¶ 13, ECF No. 49. If a manufacturer provides directions on using a product, a dentist should read the directions to make sure he is using it appropriately. *See* Giannini Dep. 29:16-20, ECF No. 49-1 at 22. If he is using the material within the confines of the product's purpose, Dr. Giannini reads the Material Safety Data Sheets, but would not feel the need to read additional material. *See id.* at 28:4-29:15. A dentist's failure to be knowledgeable about the materials before using them on patients could place a patient at an increased risk. UF ¶¶ 14-15, ECF No. 49. Dentists should stay up-to-date on techniques and methods that reduce the risk to patients. *Id.* at UF ¶ 16.

The potential of foreign body aspiration or ingestion is a worldwide health problem in dentistry. *Id.* at UF ¶ 20. An object placed into the oral cavity can be aspirated or swallowed, including impression material. *Id.* at UF ¶ 21. A reasonable dentist would be aware that using too much impression material could result in aspiration or ingestion. *Id.* at UF ¶ 22. To reduce gagging, choking, or swallowing, a reasonable dentist should not overfill a tray. *Id.* at UF ¶¶ 54-55. When using Aquasil impression material, a dentist should avoid the patient ingesting or swallowing the material to prevent irritation or obstruction and because larger quantities of Aquasil may cause

bowel obstruction. *Id.* at UF ¶ 23. A dentist using Aquasil should be aware that bowel obstruction or digestive distress may result from ingestion. *Id.* at UF ¶ 24. An impression procedure may put a patient at risk of aspirating the impression material if a large amount of material or a low viscosity material is introduced to the posterior oral cavity. *Id.* at UF ¶ 25. When doing an open mouth impression procedure, dentists should observe the entire impression procedure. *Id.* at UF ¶ 61.

The possibility of swallowing or aspirating an object is increased by the common practice of placing a patient in a supine position for sit-down, four-handed dental treatment. *Id.* at UF ¶ 40. Use of more upright positions minimizes the risk of ingestion or aspiration. *Id.* at UF ¶ 43. There is a special concern in patients with diminished protective reflexes. *Id.* Digestive issues like acid reflux are factors to suggest placing a patient in a more upright position. *See id.* at UF ¶¶ 44-45.[5]

A dentist should be able to effectively communicate with a patient about the various risks of different procedures and methods to minimize risks during a procedure. *Id.* at UF ¶¶ 30-31. Dentists should instruct patients that if an object falls on the tongue, they should try to suppress the swallowing reflex and turn their heads to the side. *Id.* at UF ¶ 32. A dentist must instruct the patient on what to expect and what to do if dental impression material begins to flow into the oropharynx and the gagging reflex begins. *Id.* at UF ¶ 33.

### 2. Dr. Puckett's knowledge of impression products and risks and his use of warnings

---

[5] Defendant disputes that Ms. Williams' history of acid reflux was known to Dr. Puckett. Although Plaintiff is correct that Defendant failed to dispute the fact with admissible evidence in the form of an affidavit from Dr. Puckett, Plaintiff's only cited evidence to support the fact is a statement from Dr. Littman that Ms. Williams' medical history of acid reflux was known to Dr. Puckett. *See* Pl.'s Mot. ¶ 46, ECF No. 49 at 7 (citing Littman Aff. ¶ 12, ECF No. 49-1). How Dr. Littman has personal knowledge of what Dr. Puckett knew is not explained. Plaintiff contends in her reply brief that her history of acid reflux was noted in her dental records, Pl.'s Reply 16, ECF No. 62, but that fact is not explained in the affidavit. Instead, Dr. Littman said he reviewed dental and medical records relating to Ms. Williams, *see* Littman Aff. ¶ 4, ECF No. 49-1, so it is not clear from Plaintiff's admissible evidence that Dr. Puckett's dental records for Ms. Williams contained her history of acid reflux, rather than her medical records. The Court will therefore not deem this fact admitted, because there is no admissible evidence establishing the fact and Defendant disputes it.

Dr. Puckett may have read the literature from Aquasil regarding its product, but he does not recall specifically. *See* Puckett Dep. 48:16-23, ECF No. 54-1. He is not aware of any specific manual or instructions that Aquasil releases for use of its products. *Id.* at 54:23-55:4. Dr. Puckett is not aware of any manufacturer's specifications for how much material to use when taking an impression; instead, he determines the amount for each individual case based upon his experience and judgment. *See id.* at 57:12-58:11. Dr. Puckett has performed tens of thousands of impressions, using many different types of materials and techniques for different dental situations. *See id.* at 76:8-77:13. Dr. Puckett acknowledged that overfilling a tray with impression material could potentially make the procedure more uncomfortable, but he was unaware of a specific risk of ingesting the material because in his 26 years of practice and tens of thousands of impressions, Dr. Puckett has never seen or heard of a patient ingesting dental impression material. *See id.* 46:10-47:10. Nor has Dr. Puckett heard of a patient having an intestinal obstruction or blockage caused by ingestion of impression material. *Id.* 51:3-7. Among the risks associated with using Aquasil monophase, Dr. Puckett listed gagging, discomfort, anxiety, removal of a loose tooth or of other dental work, but he did not list intestinal blockage. *See* Puckett Dep. 53:6-56:2, ECF No. 54-1. He noted, however, that if a patient told him she had swallowed some impression material, he would probably refer the patient to the medical clinic or to a gastroenterologist. *See id.* 74:25-75:11.

Dr. Puckett considers a dental impression to "be a pretty low-risk technique" with proper training; dental assistants can make impressions and keep the patient safe and comfortable with proper training. *Id.* at 49:20-50:4. He believes that intestinal blockage from the impression procedure is highly unlikely. *Id.* at 50:18-51:2. His concerns during the procedure are to use a specific impression technique designed to make good impressions and keep the patient comfortable. *See id.* at 49:14-19. Dr. Puckett believes that using too little impression material will

not capture the detail and using too much is a waste of material. UF ¶ 59, ECF No. 49. He believes that using too much material may make a patient more uncomfortable, but he is not sure it could place a patient more at risk. *Id.* at UF ¶ 60. When filling an impression tray, Dr. Puckett uses an amount that is appropriate based on his judgment. *See* Puckett Dep. 60:5-19, ECF No. 54-1.

When Dr. Puckett conducts a dental impression procedure, he typically prepares the patient by explaining what is about to happen. *Id.* at 30:14-25. He will typically say, "Open wide, here comes the impression, breathe in and out through your nose." *Id.* at 30:24-31:5. He may also tell them to breathe out of their mouths and that it will be the longest two minutes of their lives. *Id.* at 53:22-54:3. According to Mr. Albrecht, Dr. Puckett usually instructs patients during the procedure to breathe through the nose, and nothing else that he could remember. Albrecht Dep. 32:23-33:5, ECF No. 49-1 at 38-39. According to another dental assistant, Patricia Gonzales, Dr. Puckett's training was that taking impressions is a standard procedure, and there is really nothing about which you need to be careful. *See* Gonzales Dep. 18:4-19, ECF No. 49-1 at 41. When asked if she heard Dr. Puckett communicate risks to patients about taking impressions, she responded with her understanding that there is usually not a risk with that. *See id.* at 22:10-22, ECF No. 49-1 at 42.

When Dr. Puckett places the tray in a patient's mouth, he presses it into place, holds it in place while looking directly in the patient's mouth, and watches the impression material, the tray, and the patient; he is with the patient at all times. Puckett Dep. 70:2-11, ECF No. 54-1. Dr. Puckett will look at the timer on the bracket table to give updates to the patient as to how much time is left, so he is not constantly looking in the patient's mouth every second of the two-minute procedure. *See id.* 73:12-74:6.

## III. ANALYSIS

The Federal Tort Claims Act ("FTCA") permits individuals to sue the Government for

injuries caused by negligent acts or omissions of a Government employee while acting in the scope

of his employment under circumstances in which a private person would be liable "in accordance

with the law of the place where the act or omission occurred." *Miller v. United States*, 463 F.3d

1122, 1123 (10th Cir. 2006) (quoting 28 U.S.C. § 1346(b)(1)). The court must look to state law

for questions of substantive liability. *Id.* In order to prevail on a claim of medical malpractice in

New Mexico, a plaintiff must demonstrate that (1) the defendant owed the plaintiff a duty

recognized by law; (2) the defendant breached the duty by departing from the proper standard of

medical practice recognized in the community; and (3) the acts or omissions complained of

proximately caused the plaintiff's injuries. *Blauwkamp v. Univ. of New Mexico Hosp.*, 1992-

NMCA-048, ¶ 13, 836 P.2d 1249. Ordinarily, expert medical testimony is necessary to establish

the relevant standard of care and any deviation from it. *See Pharmaseal Labs., Inc. v. Goffe*, 1977-

NMSC-071, ¶ 17, 568 P.2d 589.

### A. Reasonableness of Charges for Medical Treatment

A plaintiff must show that the medical treatment costs were reasonable and necessary to

treat injuries caused by the defendant's acts. *See* UJI 13-1802, 13-1804 NMRA; *Neiberger v. Fed*

*Ex. Ground Package Sys. Inc*., 566 F.3d 1184, 1193 (10th Cir. 2009). Plaintiff argues that she has

established this element through the testimony of Dr. Peter Driscoll, a board-certified general

surgeon with decades of practice, who reviewed Ms. Williams' medical bills and determined them

to be reasonable and necessary due to her having swallowed dental impression material on

November 19, 2015. Driscoll Aff. ¶¶ 1-8, ECF No. 46 at 12-14. Plaintiff contends that Defendant

has no expert to refute this opinion.

As for the question of the necessity of the procedures, it is undisputed that the medical

treatment reflected in Plaintiff's medical records was necessary as a result of the ingested "foreign

body." Def.'s Resp. to Second Req. for Admis. and Interrog. ¶ 12, ECF No. 59 at 24. Nevertheless, Defendant argues that there are fact issues concerning whether Plaintiff's injuries were caused by Defendant, including whether the foreign body was dental impression material, whether the foreign body caused the intestinal perforation, and whether Plaintiff's efforts to relieve her discomfort through enemas and digital manipulation caused the perforation.

Plaintiff asserts that Defendant has not created a genuine dispute of fact as to whether the foreign body was dental impression material, pointing to the considerable evidence in the record supporting her case, including her own testimony that she was certain she could not have swallowed anything else to explain the foreign body, except the dental impression material, *see* Williams Dep. 115:8-116:2, ECF No. 48 at 14. Defendant, however, has presented evidence that Dr. Puckett and his assistant did not observe Ms. Williams swallow dental impression material during the procedure and she did not tell them she did so during the procedure. Although there is evidence in the record to the contrary, it is for the Court sitting as the trier of fact to make the credibility determinations in the face of competing evidence. The Court cannot make those determinations now. The Court thus finds a question of fact exists as to causation, and thus, cannot find as a matter of law that Plaintiff satisfied the third element to establish medical negligence.

Aside from the question of whether Defendant caused the injuries, there is a separate question as to the reasonableness of the medical bills themselves. Defendant attacks Dr. Driscoll's qualifications for analyzing medical bills and expenses and his methodology in forming his opinions. Defendant is essentially making a *Daubert* challenge.

To determine whether an expert opinion is admissible, the district court performs the following two-step analysis: (1) the court must determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion, and (2) if the expert is so

qualified, the court must determine whether the expert's opinion is reliable under the principles set forth in *Daubert. 103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). The proponent of the expert bears the burden by a preponderance of the evidence to establish that the requirements for admissibility have been met. *See United States v. Nacchio*, 555 F.3d 1234, 1241, 1251 (10th Cir. 2009). Trial courts have equally broad discretion in both determining the reliability and admissibility of expert testimony and in deciding how to assess an expert's reliability, including what procedures to use in making that assessment. *United States v. Velarde*, 214 F.3d 1204, 1208-09 (10th Cir. 2000). So long as the district court has enough evidence to perform its duty in assessing the relevance and reliability of an expert's proposed testimony, a hearing is not required. *See United States v. Call*, 129 F.3d 1402, 1405 (10th Cir. 1997).

In his affidavit, Dr. Driscoll explains that his opinions are based on his review of Ms. Williams' medical records and relies on his training and experience in the field of medicine, including his familiarity with what is reasonably and customarily charged for medical treatment and surgical procedures in New Mexico. Based on the contents of the affidavit, Dr. Driscoll's medical qualifications as a general surgeon with decades of experience in the practice of medicine likely provide him with the qualifications necessary to examine medical bills and render his opinions. His knowledge of medical billing practices and his methods for arriving at his conclusion, however, are not currently in the record with enough detail for the Court to determine the matter. Accordingly, the Court will not make a *Daubert* ruling without having heard the evidence. Because this Court sits as the trier of fact, a pre-trial *Daubert* hearing is not necessary. For efficiency, the Court will make the necessary *Daubert* determinations at trial.

Given the factual issues that must be decided at trial, and the evidentiary rulings that must be made after considering Dr. Driscoll's testimony, the Court will deny Plaintiff's Motion for

Partial Summary Judgment on the Reasonableness of Medical Charges (ECF No. 46).

## B. Causation

Plaintiff argues that she is entitled to judgment as a matter of law on the issue of causation, relying on the expert testimony of Dr. Littman and Dr. Driscoll and Defendant's admission that the medical treatment was necessary as the result of a "foreign body." Defendant asserts that the experts base their opinions on Plaintiff's deposition testimony that she swallowed dental impression material. As discussed *supra*, Defendant has submitted contradictory evidence and the Court cannot make credibility determinations or weigh the persuasiveness of the competing evidence until trial. There are also questions of fact concerning which injuries were caused by the foreign body and which, if any, were caused by Plaintiff's self-help efforts, as discussed more fully below. The Court thus finds questions of fact exist as to causation and will deny Plaintiff's Motion for Partial Summary Judgment on Causation (ECF No. 47).

## C. Foreseeability and Reasonableness of Plaintiff's Self-Instrumentation

Defendant contends there is evidence that Plaintiff's "self-instrumentation" (her digital manipulation and use of an enema) caused her intestinal perforation. The United States asserts an affirmative defense of Plaintiff's comparative negligence. *See* Answer 4, ECF No. 5. Plaintiff contends that her self-instrumentation does not break the causal chain or represent an independent intervening cause because it was foreseeable that she would attempt to relieve her distress. Plaintiff asserts that there is no evidence that she acted negligently in using the enema or in her digital manipulation. Plaintiff argues that Defendant's own expert Dr. Martinez opined that Plaintiff's actions were reasonable, and thus, Defendant cannot establish Plaintiff's negligence. She seeks judgment as a matter of law "on the issue of independent intervening cause, and on the issue of comparative negligence, with respect to Plaintiff's self-instrumentation." Pl.'s Reply 8, ECF No.

61.

"Defendant agrees that the elements of [N.M. UJI 13-305] instruction preclude the use of an 'independent intervening cause' to account for Plaintiff's comparative negligence or for cases involving multiple acts of negligence by concurrent tortfeasors." Def.'s Resp. 10-11, ECF No. 53. Defendant, however, argues that there are fact questions concerning Plaintiff's own comparative negligence and that the foreseeability of her negligence does not preclude a finding of fault by Plaintiff. *See id.* at 9-10. Given that Defendant is not asserting that the facts present an independent intervening cause, this issue is resolved in favor of Plaintiff.

When comparative fault is at issue, the fact-finder apportions fault between the plaintiff and defendant. *See Tafoya v. Rael*, 2008-NMSC-057, ¶ 22, 193 P.3d 551. Comparative fault is not an issue for the trier of fact unless there is evidence of plaintiff's negligence. UJI 13-2218 NMRA, Directions for Use. "An act, to be 'negligence', must be one which a reasonably prudent person would foresee as involving an unreasonable risk of injury to [herself] … and which such a person, in the exercise of ordinary care, would not do." UJI 13-1601 NMRA. Every person has a duty to use ordinary care for the safety of herself and others. UJI 13-1604 NMRA. "Every patient has a duty to exercise ordinary care for the patient's own health and safety," and a "patient who fails to do so is negligent." UJI 13-1110 NMRA.

According to Plaintiff, Dr. Martinez did not state in his expert report that Plaintiff's self-instrumentation was negligent. Defendant nonetheless argues that Dr. Martinez's deposition testimony shows that Plaintiff's self-help instrumentation likely caused the perforation. Dr. Martinez testified that it is not unreasonable for a patient feeling discomfort from impacted bowels or constipation to seek relief through an enema. *See* Martinez Dep. 38:11-24, 40:9-18, ECF No. 53-4. He acknowledged that patients may attempt to cope with fecal impaction by digitally

attempting to dis-impact it. *See id.* at 29:1-9, 66:4-11. He testified, however, that it is not advisable to attempt digital removal if the patient has no success with laxatives or enemas. *See id.* at 40:11-24. Dr. Martinez opined that if all Plaintiff did was what she described in her deposition – inserting half a finger – it is "unlikely that caused a perforation, if that's all she inserted." *Id.* at 65:6-14. He suggested, however, that using another object to remove the fecal material or pushing the enema too hard could cause the perforation. *See id.* at 29:1-30:14. Dr. Martinez's testimony concerning self-help methods, combined with Dr. Martinez's explanation as to why the foreign body did not likely cause the perforation, is some evidence that Plaintiff may not have used ordinary care for her own health in how she self-administered her enema or attempted digital dis-impaction. All inferences must be construed in favor of Defendant at this stage. Consequently, the Court finds a question of fact exists on the issue of Plaintiff's negligence.

Even if Plaintiff acted negligently in her self-instrumentation, Defendant must show that the negligence caused her damages. Plaintiff contends there is no evidence of this element because Dr. Martinez does not have an opinion whether, if she did not perforate her rectum, she would have needed surgery anyway. Martinez Dep. 82:4-8, ECF No. 61 at 26 of 30. It is undisputed that the medical treatment reflected in Plaintiff's medical records was necessary as a result of the ingested foreign body. Plaintiff seeks damages not only for "extensive medical treatment" but also for "significant suffering, distress and pain." Compl. ¶ 16, ECF No. 1. The Court cannot say as a matter of law on the record before it that Plaintiff's alleged negligence did not cause some of her damages aside from the surgery itself. For the foregoing reasons, the Court will not grant summary judgment to Plaintiff on Defendant's comparative negligence affirmative defense.

### D. Liability

As an initial matter, Dr. Edward Littman, DMD, rendered the following opinions upon

which Plaintiff relies in her motion for partial summary judgment on liability: (i) the standard of care for a dentist is to read and be familiar with the manufacturer's instructions for the use of impression materials and to be aware of the risks and consequences of ingesting impression material, Littman Aff. ¶ 8, ECF No. 49-1 at 13-17, (ii) the standard of care is to observe placement of the impression tray and remove excess material to prevent it from being ingested by the patient, *id.* ¶ 11, (iii) the standard of care is to examine the impression after its removal from the patient's mouth to ensure the impression was comparable to the original amount of material placed on the tray, *id.* ¶ 11, and (iv) it is below the standard of care not to observe the impression taking throughout the procedure, *see id.* at ¶ 9. Defendant disputes these opinions on the basis that Dr. Littman has not yet been subjected to voir dire to establish his qualifications. Plaintiff answers that Defendant chose not to take Dr. Littman's deposition and has not filed a *Daubert* motion questioning his qualifications, so his response does not adequately create a factual dispute concerning Dr. Littman's opinions.

As a general matter, the Court agrees with Plaintiff as to the proper method to dispute a purported expert's facts. Defendant nevertheless appears to be making a *Daubert* challenge in his response with respect to Dr. Littman's qualifications. Although his affidavit indicates Dr. Littman is qualified, those assessments by the Court are best made after considering evidence at a hearing or trial. Significantly for purposes of deciding this motion, Dr. Giannini essentially made the same opinions as Dr. Littman as to opinions (i) and (ii) described above regarding being familiar with the impression materials and instructions for use and avoiding excess impression material. The Court has considered those undisputed opinions. *See* UF ¶¶ 13-16, 20-25. As for Dr. Littman's opinions concerning checking the tray and observing the impression throughout the procedure, even if the Court considers those opinions, as discussed *infra*, the Court would not grant summary

judgment as to liability because other questions of fact exist. The Court therefore need not determine herein whether Dr. Littman's opinions are admissible prior to conducting a *Daubert* inquiry at trial.

Turning to Plaintiff's motion for partial summary judgment on liability, Plaintiff seeks summary judgment on at least one of her theories of liability. This Court has already determined that questions of fact exist as to causation, so the Court will not grant Plaintiff summary judgment on liability as to any of her theories. Plaintiff nonetheless asks the Court to find as a matter of law that Plaintiff has satisfied the elements of the medical negligence claim regarding the standard of care and deviations from the standard of care. Plaintiff asserts that the following acts or omissions by Dr. Puckett fell below the standard of care for dentistry.

First, Plaintiff asserts that the evidence demonstrates Dr. Puckett did not read and familiarize himself with the materials and with the manufacturer's instructions for the use of impression material. Defendant does not dispute the opinions offered by his own expert, Dr. Giannini, that a reasonable dentist, before using a certain product, should educate himself on what the warnings are for a given product, especially manufacturer's warnings and precautions indicated by the manufacturer. UF ¶ 13, ECF No. 49. Although Defendant argues that these opinions do not create a standard of care, the Court disagrees and finds that these opinions establish a standard of care for dentists. The question then is whether Dr. Puckett deviated from the standard of care as a matter of law. According to the record in Defendant's favor, Dr. Puckett may have read the literature from Aquasil regarding its product, and he has conducted tens of thousands of impressions. Puckett Dep. 48:16-23, 76:8-77:13, ECF No. 54-1. Although a close question, the Court grants inferences in Defendant's favor and finds a question of fact exists as to whether Dr. Puckett was familiar with the materials, read the warnings for Aquasil monophase, and met the

standard of care.

Next, Plaintiff contends that Dr. Puckett was not familiar with the risk that ingesting dental impression material may cause a bowel obstruction. Although Dr. Puckett stated that he had never heard of bowel obstruction occurring in his 26 years of practice, he also testified that had a patient told him she swallowed impression material, he would probably refer the patient to follow up medical care or a gastroenterologist. *See id.* at 74:25-75:11. Construing inferences in his favor, this testimony suggests Dr. Puckett understood the medical risk of ingestion, but he had not seen nor heard of it occurring in his 26 years of practice and tens of thousands of impressions, so he considered the risk of intestinal blockage highly unlikely. *See id.* at 50:18-51:2. In addition, there is a question of fact as to whether Ms. Williams reported to Dr. Puckett that she swallowed impression material, and thus, whether Dr. Puckett's conduct in not ensuring follow-up medical care fell below the standard of care.

Third, Plaintiff asserts that Defendant failed to instruct her on the impression process and warn her about the risks posed by the impression material. Plaintiff maintains that Dr. Puckett did not instruct Ms. Williams to suppress the swallowing reflex and turn her head should an object fall on her tongue. Defendant admits that dentists should communicate risks of a procedure with a patient and instruct patients (i) that if an object falls on the tongue, they should try to suppress the swallowing reflex and turn their heads to the side, and (ii) on what to expect and what to do if dental impression material begins to flow into the oropharynx and the gagging reflex begins. UF ¶¶ 30-33, ECF No. 49. The record, even viewed in Defendant's favor, demonstrates that Dr. Puckett did not instruct Ms. Williams as to the two specific instructions recommended by Dr. Giannini, Defendant's expert; nor did Dr. Puckett instruct her about the specific risk in swallowing impression material. Although Defendant argues that Plaintiff's counsel failed to follow-up with

more detail as to Dr. Puckett's instructions, Dr. Puckett's deposition testimony indicated he did not give either instructions (i) or (ii) and there was no ambiguity or contradictions in his testimony or contradictory testimony from other witnesses. Defendant could have supplemented the deposition testimony with an affidavit to clarify any misconceptions, but he did not do so. Based on the record before the Court, Dr. Puckett did not instruct Ms. Williams of the risks of swallowing impression material or instruct her on what to do if she began to swallow impression material. Consequently, as to this third theory of liability on the failure to warn, the Court finds that no questions of fact exist as to the standard and Dr. Puckett's failure to adhere to that standard. Nevertheless, there is a question of fact as to whether the failure to give instructions (i) and (ii) proximately caused Plaintiff's injuries.

Fourth, Plaintiff states that Dr. Puckett used a fully reclined position during the procedure with a patient with a known history of acid reflex, making her more susceptible to swallowing dental impression material and suffering complications. The record indicates an ambiguity on the meaning of "reclined" used by the witnesses and there is testimony indicating Ms. Williams may not have been fully reclined. Because questions of fact exist as to how reclined Ms. Williams was during the procedure and whether her position during the procedure fell below the standard of care, the Court will not grant summary judgment on this theory.

Fifth, Plaintiff contends that Dr. Puckett used an overfilled impression tray and failed to check that the amount of material in the filled tray was comparable to the original amount of material placed on the tray. A question of fact exists as to whether Dr. Puckett overfilled the tray he used with Ms. Williams, precluding summary judgment on this theory.

Finally, Plaintiff argues that Dr. Puckett failed to observe Ms. Williams throughout the impression process. Although Defendant admits that dentists should observe the entire impression

procedure, Defendant disputes that his looking at the timer during the procedure fell below the standard of care. According to the record viewed in Defendant's favor, Dr. Puckett looks directly in the patient's mouth and watches the impression material, the tray, and the patient during the procedure, but he looks at the timer briefly to give updates to the patient as to how much time is left for the impression. *See* Puckett Dep. 70:2-11, 73:12-74:6, ECF No. 54-1. The Court finds a question of fact exists as to whether Dr. Puckett failed to properly observe his patient throughout the impression process.

**IT IS THEREFORE ORDERED** that

1. Plaintiff's Motion for Partial Summary Judgment on the Reasonableness of Medical Charges (**ECF No. 46**) is **DENIED**.

2. Plaintiff's Motion for Partial Summary Judgment on Causation (**ECF No. 47**) is **DENIED**.

3. Plaintiff's Motion for Partial Summary Judgment on the Foreseeability and Reasonableness of Plaintiff's Self-Instrumentation (**ECF No. 48**) is **GRANTED** to the extent that she seeks a ruling as a matter of law that there is no independent intervening event at issue in this case, but the motion is otherwise **DENIED**.

4. Plaintiff's Motion for Partial Summary Judgment on Liability (**ECF No. 49**) is **GRANTED** to the extent that the Court finds that no questions of fact exist as to the standard, and Dr. Puckett's failure to adhere to the standard, regarding Plaintiff's third theory of liability on the failure to warn about the risks of the procedure as described *infra* at 19-20, but the motion is otherwise **DENIED**.

_____

**SENIOR UNITED STATES DISTRICT JUDGE**